Moncure, P.,
delivered the opinion of the court.
*652 This is an appeal from a decree of the circuit court of Lee county, rendered in a suit in which Mary and John P. Hammond, infants, suing by Andrew J. Litton, their next friend, were plaintiffs, and James W. Sage, their late guardian, and William W. Sage, his surety in his bond as guardian, were defendants. The material facts of the case, and proceedings therein, are as follows:
On the 18th day of March 1867, the said James W. Sage was appointed and qualified as guardian of the said infants in the county court of Lee county, where they resided, and he thereupon entered into bond as such, with his brother, the said William W. Sage, as his surety. The only estate to which the said infants were entitled was a claim to a pension, under an act of congress, in consideration of military services rendered by their father, Arnold P. Hammond,' to the United States during their late war with the Confederate States, in the course of rendering which services he died.. His widow, and the mother of the said infants, afterwards intermarried with their said guardian, at what precise time does not appear, though probably before he qualified as guardian. They seem to have separated not very long after such qualification; but at what precise time does not appear. The said guardian was a pension claim agent, and undertook as such the prosecution of the said claim of his wards. He succeeded in establishing their claim to a pension to the amount of twelve dollars per month, or one hundred and forty-four dollars per annum, during their minority, payable semi-annually. In little more than a year after the qualification of the said guardian, to wit: on the 18th day of May 1868, in a proceeding by motion in the county court of said county, in which the said surety, William W. Sage, was plaintiff, and *653 the said guardian, James W. Sage, was defendant, the object of which motion was to require the defendant to show cause why he should not be required to give new bond as guardian for Mary and John P. Hammond, an order was made by the said court in these words: “This day came the plaintiff, and it appearing to the court that the defendant has had legal notice of this motion, and he failing to show any cause why he should not give a new bond, it is ordered that the defendant be removed from his office of guardian aforesaid, and that the plaintiff be released from further liability as his security, and that the plaintiff recover against the defendant his costs.”
The said James W. Sage, claiming to act as guardian of the said infants, and no doubt exhibiting to the proper authority an official copy of the order appointing him as such, obtained from the pension office in the department of the interior a certificate in due form, in his name as guardian of the said infants, showing their title to the said pension and his authority, as their guardian, to receive it for them. At what precise time this certificate was issued does not appear, though it was, no doubt, during the period between the date of the order of his appointment and the date of the said order of revocation. It does not appear that there was any appointment of another guardian of the said infants, at least for more than a year after the date of said order of revocation; and in June 1869, more than a year thereafter, the said James W. Sage, claiming still to have authority to act as. such guardian, received from the proper public functionary at Washington six hundred and sixty-eight dollars and seventy-one cents on account of said pension, and under and in virtue of the said certificate; no notice having been given by the said James W. *654 Sage, or any other person, to the authorities at Washiugton of the said order of revocation, or that there any doubt or question as to the continued authority of said James W. Sage to receive the said pension, and the officer making such payment having received no information to the contrary, and acting in the matter under the belief that the said authority still existed.
Shortly thereafter, but how long does not appear, though probably not more than a month or two, Andrew J. Litton appears to have been appointed and to have qualified as guardian of the said infants, though there is in the record no copy of any order of court appointing him as such; and we cannot, therefore, express any opinion as to the validity of his appointment. After his appointment he demanded of the said James W. Sage an account and payment of the money he had received on account of said pension, and a surrender of the certificate which had been issued to him therefor as aforesaid; but the said James W. Sage failing and refusing to render such account and make such payment or surrender the said certificate, this suit was instituted to enforee his obligation and that of his said surety in that respect. It was brought in November 1869.
In the bill, which was filed by the said infants, by the said Andrew J. Litton as their next friend and guardian, they set out substantially the facts before stated, and set forth the object of the bill to be; to compel the said James W. Sage to deliver the said certificate of pension to the said, Litton, the proper guardian of said infants, that he might be enabled to collect whatever was due them; also to have an account taken and ascertain what amount of •money he drew from the United States government as *655 guardian of said infants, and what he then owed them; and also, on a hearing, to obtain a decree against the said James W. Sage and William W. his surety, holding them to a strict accountability to said infants, who were of such tender ages as to be incapable of knowing their rights and enforcing them; and they pray that the said James W. and William W. Sage be made defendants to the bill, and for special and general relief.
A copy of the guardianship bond was exhibited with the bill, and is in the usual form, the condition being that the guardian would faithfully perform the duties of his office of guardian according to law.
There was but one deposition taken in the case, and that was the deposition of the said A. J. Litton, which was taken by the defendant James W. Sage. The witness, in answer to questions propounded to him by the said defendant, testified, among other things, that the said defendant paid to the witness, wheat, flour, rent corn, bacon, &c. “ in consideration of a settlement as mediator between Rebecca L. Sage the mother of said children, and defendant, which included all dealings between the plaintiffs and defendants at the separation, on or about May 1868. At the time these articles were paid, the defendant agreed to go on and prosecute a pension claim for the children of Mary and John P. Hammond, and when obtained he was to retain his fees and expenses, and pay over the balance to Rebecca L. Sage, or the children or their legal representative: that after or about the time A. J. Litton was appointed guardian of Mary and John P. Hammond, and after the certificate was obtained, the defendant James W. Sage agreed to take $110 in full out of the claim, and pay the balance over to witness as soon as he was appointed guardian and had given. *656 bond.” After he was appointed guardian he notified the commissioner of pensions of that fact, and not to-any money to James W. Sage on the pension eertificate aforesaid. The said defendant shewed to the witness a letter received by said defendant from the said commissioner, dated February 2nd, 1870, requiring the former guardian and claim agent to return immediately to the pension office the pension certificate payable to the said defendant. Witness received a letter from the said commissioner of pensions some time after the one shown by said defendant as aforesaid, stating that the said certificate had never been received at Washington city, and that payment could have been made to witness on the old certificate. Witness afterwards received another letter from said commissioner, stating that he dispaired of getting the old certificate, and directing the witness to make application for a new one, which he did; and defendant filled a blank for witness. These letters here referred to, as having been received by the witness from the commissioner of pensions, are copied in the record, and were probably returned with the said deposition as part thereof.
The defendants filed their several answers. That of James W. Sage contains nothing of importance. That of William W. Sage, after admitting the said guardianship of his brother, for which respondent had become surety, contains this statement: “Your respondent has heard that James W. Sage applied to the proper pension authority of the United States for granting pensions, to have a pension allowed to the complainants, and to place them on the pension roll as pensioners. But before he ever drew one cent of pension for them, your respondent was by order released from his suretyship, and absolved from the obligation *657 of Ms bond, and was released therefrom; and James W. Sage was released from his said guardianship. Your respondent has heard that after his i’elease said, and the removal of said guardian from his office of guardian, James W. Sage drew a pension for the complainants. What he did with the money your respondent can’t state, except that he has heard it said he loaned one Joshua Fields all or the greater part thereof. But if be ever drew and loaned or squandered or disposed of any money, treasury notes, or national bank notes that belonged to complainants, he did so after your respondent had been released by the order aforesaid from his said suretyship; and the said James W. Sage had been removed from his said office; and consequently no liability therefor fell on respondent. Your respondent knows nothing of what his co-defendant did with the pension certificate, and was and is not responsible to any one for his acts* whether legal or illegal, done after your respondent’s release from his suretyship aforesaid.” With the said answer was filed a copy of the order of revocation aforesaid.
On the 4th day of June 1870, a decree was made in the cause in these words: “This cause coming on this day to be heard upon the bill, the separate answers of the defendants, J. W. and W. W. Sage, with the replications thereto, was argued by counsel. And thereupon, upon inspection of the papers in the case by the court, it appears that neither the exhibits of the plaintiff' nor defendants have been filed, and that there is not such evidence before the court as enables it to make any decree in the premises, further than to order the defendant J. W. Sage to deliver up to the legally constituted guardian of the plaintiffs any effects and evidences of debt which he may have belonging to said plaintiffs. And “it appearing to the court, that the *658 answer of the defendant J. "W. Sage, though not excepted to by the plaintiffs, is too scandalous to be to remain on file among the records of this court; it is therefore ordered that the said J. W. Sage surrender to the legally appointed guardian of plaintiffs any evidence sof debt or other claim and any effects in his ' possession belonging to the plaintiffs, and especially' that he surrender to such guardian any certificate or other evidence of the allowance of a pension by the United States to them in his possession or under his control.” An order was then made, that the answer of James W. Sage should be taken off the file and referred to a commissioner of the court, who was directed to expunge from the same all scandalous and impertinent matter, leaving nothing therein but what is responsive or relevant to the matters contained in the bill; and the parties, plaintiffs and defendants, were directed before the next term of the court to file their exhibits, and time was given till then to take testimony.
The commissioner having executed the said order in regard to the answer of said James W. Sage, it was returned to the court and again filed.
The deposition of A. J. Litton, though it appears to have been filed on the 3d day of June 1870, was not noticed in the decree which was made on the next day, the 4th of June 1870, as aforesaid.
On the 12th day of October 1870 the cause came on further to be heard upon the papers formerly read, the depositions of witnesses (though there does not appear in the record any other deposition than that of A. J. Litton aforesaid), and the report of the commissioner to whom was referred the answer of said James W. Sage for scandal and impertinence, to which report there was no exception, and was argued by counsel; *659 on consideration whereof the court, after confirming said report and giving directions accordingly, decreed that the defendant James W. Sage received the check or draft of $668.71, in the month of June 1869, as the guardian of the plaintiffs, and that at the time he so received the same he was liable therefor as guardian of the plaintiffs, and the defendant William W. Sage, as security of the said guardian, is also liable therefor. And the court being of opinion that James W. Sage had never been legally removed as guardian by the county court of Lee county, it was ordered that the plaintiffs recover from the defendants the sum of $668.71, with interest from the 30th day of June 1869 till paid, subject to a credit of $110 for the services of James W. Sage as pension agent and guardian of his said wards. And the court being further of opinion that there was no proper person to receive the said fund for the said infants or to make further collections for them, to preserve the money and estate of the said infant plaintiffs until a guardian can be duly appointed and qualified, M. B. D. Lane was thereby appointed a receiver, whose duty it should be to collect of the defendants the aforesaid sum; and to enable him to do so, he was authorized to sue out process of execution therefor against the goods and chattels of the said defendants. He was also directed to demand of and receive from James W. Sage, guardian as aforesaid, all monies, debts, property, or evidences of debt, then in the hands of James W. Sage: And he was also directed to require A. J. Litton to turn over to him all notes, bonds, money, or other property, if any, then in his possession, belonging to the plaintiffs. But before receiving any property or collecting any money as aforesaid, the said receiver was directed to execute a bond, as prescribed by said decree, conditioned for *660 the due performance of his duties as such receiver. And he was directed at once to transmit to the commissioner of pensions a certified copy of said decree. And the cause was continued.
From the said decree the said James W. and William W. Sage presented to a judge of this court a. petition for an appeal; which was accordingly granted. And that is the case which we now have under consideration.
We deem it unnecessary to decide, and therefore do not decide in this case, whether the authority of James W. Sage, as guardian of the appellees, was ever legally revoked or not; or whether Andrew J. Litton was ever legally appointed as their guardian or not. We are of opinion that, in either view, there is no error in the decree appealed from, and the appellants are both liable for the amount decreed against them.
If the order made for the revocation of the guardianship be a valid order, then, of course, the said James W. Sage ceased to be guardian from the date of the order, and he, and his surety as such guardian, were liable to account to the wards, or to their future guardian, or to the court, for the estate of the wards,, which had come to his hands as their guardian. The only estate which the said wards ever had was a claim against the United States for a pension. The guardianship was instituted for the very purpose, and only for the purpose, of obtaining and collecting that pension. The surety of the guardian, who was his brother, no doubt knew that such was the condition of the wards, and such the object of the, guardianship; and for the purpose of enabling the guardian to attain that object, he became surety of the guardian in the official bond. The guardian proceeded accordingly to prosecute and establish the pension claim, and ob *661 tained a certificate from the pension office in his name •as guardian, allowing the pension claim; but before any money was received on account of it by the dian, the order of revocation aforesaid was made. Afterwards the said guardian received of the pension agent, on account of said claim, the sum of $668.71— having given no notice of the said order of revocation to the said agent, but claiming still to be such guardian—and the agent, believing that he was such guardian, and had full authority as such to receive the money, made payment to him accordingly. It was the duty of the defendant, James "W. Sage, supposing his guardianship to have been revoked by the order aforesaid, to have so informed the pension agent, and not to have received from him the amount due to his wards on account of their pension, but to have returned to him the certificate which had been issued to him for the pension, or to have delivered it to the succeeding guardian whenever one should qualify, or to such per■son as a court of competent jurisdiction might appoint to receive it. This was his duty as guardian, which he was bound by his official bond to perform, and his surety in said bond is liable as such for the breach of such duty. It is the duty of a guardian, whose powers as such are revoked to account to his wards, or to his successor as guardian, if there be one, for their estate, including evidences of claim which may have come to his hands; and if after such revocation he collect any money on account of any such claim, he, and his surety as guardian, are accountable therefor to the parties entitled thereto; at least, provided such payment be made in good faith by a person who is not informed of such revocation, and who believes at the time of making it that the party claiming to be guardian is so in fact, and has authority as such to receive the money. In Arm *662 strong’s heirs v. Walkup &c., 12 Gratt. 608, which was cited by the counsel for the appellees, it was held by court (as correctly stated by the reporter in the marginal abstract of the case) that “ the estate of the-ward having come into the possession of the guardian, his bond of office binds him in his lifetime, and his-estate after his death, for the interest, hires and profits received by him, whether received before or after the-expiration of his authority as guardian.”
The principles just stated apply to this case. The guardian at the time of the revocation of his authority as such, supposing it to have been revoked, had in his hands as guardian a claim in favor of his wards against the United States for a pension; and, as evidence of that claim, held a certificate issued to him as such guardian by the commissioner of pensions. Instead of notifying the said commissioner of the said revocation, and returning the said certificate to him, or surrendering it to the succeeding guardian, if there was one, or to the court, he continues to hold it, and to claim to be entitled to receive under it the pension due to the said infants, and he actually receives under it, on account of said pension, $668.71, which sum is paid to him by the commissioner of pensions, under the belief that he continued to be guardian of said infants, with full authority to receive the said sum of money for the said infants. And even after the said sum had been paid to him by the said commissioner, and after the latter had been informed of the supposed revocation of such authority, and had demanded a return to him by the said guardian of the certificate aforesaid, he fails and refuses so to return it, or to surrender it to the person claiming to be the succeeding guardian, and continues to hold possession of it against all claims and demands to the contrary. Under these circumstances, *663 there can be no doubt of the liability of the supposed late guardian and his surety to the said infants for the amount of their money so received by him.
But such liability in this case stands on even stronger ground than that. The infants we have seen had no estate but their claim to the said pension. To enable him to receive the amount of that claim, James W. Sage becomes their guardian, and his brother, William W. Sage, becomes his surety as such. By becoming such surety, William W. Sage enables his said brother to receive the amount of the said pension. And after enabling him to do so, the said surety seeks to avoid his liability as such by having the guardianship of his brother revoked. The proceeding instituted for that purpose takes place in little more than a year after the qualification of the guardian, and under such circumstances as tend to show that there was a fraudulent combination between the guardian and his surety to relieve the latter from liability, while the former might be able to receive the amount of the pension, and convert it to his own use, to the prejudice and injury of the infants, who would have no security to protect and indemnify them against loss. The conduct of the guardian, James W. Sage, in reference to said proceedings, is calculated to show that he connived at such a purpose, if it existed, on the part of his brother, William W. Sage, and participated therein. These two brothers were the only parties to that proceeding, and it does not appear that any friend of the infants had any knowledge or information about it, so as to be able, or have an opportunity, to guard their interest in the matter. They were too young to guard it themselves, and perhaps even to know of its existence. Ho opportunity was afforded to the guardian to give a new bond, nor does it appear that he desired to have such *664 an opportunity. He was not even required to give such a bond. It is recited in the order that “this day the plaintiff (the surety), and it appearing to the court that the defendant (the principal) has had legal ' notice of this motion, and he failing to show any cause why he should not give a new bond;” and then instead of ordering the defendant to give a new bond, and fixing a time for that purpose, it was “ordered that the defendant be removed from his office of guardian aforesaid, and that the plaintiff be released from further liability as his security, and that the plaintiff recover against the defendant his costs.” In such a casé the law requires the court to order the guardian to give a new bond in.a reasonable time, to be pre scribed by the court. Here no such order was made. Code, eh. 128, § 18, p. 949. Although the said surety no doubt knew that the principal had become guardian for the purpose of obtaining and receiving the said pension, and that the said principal would have it in his power to continue to receive the said pension if the commissioner of pensions should not be informed of the revocation of the authority of the principal as guardian, and that the infants were too young to know the importance of giving such information, or to be able to give it themselves, or have it given; yet the said surety did not himself give such information, nor have it given, but attempted to make his own escape from liability as such surety, while, as he supposed, he left the infants exposed to the danger of a loss, which, by his own act, he had enabled his brother to inflict upon them. Under these circumstances, it was certainly the duty of the surety, while using means to guard himself against the effect of illegal acts on the part of his brother, to use also the means necessary to guard these infants against the effect of such acts, espe *665 cially as he had by becoming such surety enabled his brother to commit those acts.
We are therefore of opinion that if the order of revocation aforesaid be a valid order, the surety, William W. Sage, is liable for the amount decreed against him, and there is no error in the said decree. Let us now proceed to enquire, on the other hand, whether he be liable in the view taken of the case by the court below, that James W. Sage has never been, legally, removed as guardian by the county court of Lee county, and that he received the check or draft of $668.71 in the month of June 1869, as the guardian of the plaintiffs, and that, at the time he so received the same he was liable therefor as guardian, and the defendant W. W. Sage as the surety of the said guardian.
In that view of the case there can be no difficulty in maintaining the propriety of the decree appealed from. Whether the order of revocation be valid or not, the evidence in the record is conclusive to show the propriety of taking the estate of the infants out of the hands of the person who was appointed their guardian and qualified and has been acting as such, but who is shown to be wholly unfit for the trust. The interest of the infants plainly requires that their estate shall be taken out of his hands, or prevented from going into them, and shall be taken possession of by a court of chancery, the ultimate and paramount guardian of all infant orphans, and placed in the hands of a receiver, to be taken care of and managed for them, until they are capable of taking care of and managing it for themselves, or another guardian is duly appointed and qualified for that purpose.
blow this is what the court below intended to do and has done by the decree appealed from. By it a receiver is appointed, who is directed to collect, by *666 execution if necessary, the said sum of $668.71, with interest from the 30th day of June 1869 till paid, sub-to a credit of $110, for the services of James W. gage as pension agent and guardian of his said wards,. and to demand and receive from James W. Sage,, guardian as aforesaid, all monies, debts, property, or evidences of debt nowin his hands; and to require Andrew J. Litton to turn over to him all notes, bonds,, money, or other property, if any, now in his hands,, belonging to the plaintiffs in this suit. But before receiving any property, or collecting any money as. aforesaid, the receiver is required to give bond &c., conditioned for the due performance of his duties as a such receiver. Certainly this decree will be most beneficial to the infants, while it cannot be justly or properly excepted to, either by James W. Sage or Wm. W. Sage. It seems to be the very decree called for by the exigencies of the case, looking to the relative rights and obligations of all parties concerned. There was no necessity for an account of the guardianship in order to the decree which was rendered for the sum of $668.71 with interest, subject to a credit of $110 as aforesaid. It appears from the record that about the time the order of revocation was made there was a settlement between the mother of the said infants and their guardian which embraced all dealings between them, and that they then owed him nothing. When, after that, he received on account of their claim to a pension, the sum of $668.71, he became their debtor to that amount, subject only to credit for $110, his charge as pension agent for attending to the claim. It was therefore proper to render a decree in their favor against him and his surety for the sum so received, and interest, subject to the said credit. But the decree, it will be observed, is' inter *667 locutory only, and not final. The fund and the whole subject are to be placed in the hands of the court, through its receiver, and can be disposed of by the court hereafter according to the right of all persons who may be interested therein. It cannot with propriety be said, that in the view last taken, the guardian’s authority continues to exist, and that therefore he is entitled to continue to hold the fund. The guardian and his surety can set up no such claim against the authority and duty of a court of chancery in such a case to interpose and take charge of the estate of infants thus palpably endangered by the acts and defaults of the guardian.
We think that in any view which can properly be taken of the case there is no error in the decrees rendered therein, and that the same ought to be affirmed.
Decree affirmed.